Welch, J.
We are inclined to the opinion that, in holding Corwin liable, as between him and Suydam, to account for this property, the Superior Court was in error. There is no pretense of any actual fraud or bad faith, either on the part of Corwin or Andrew De Graff. The order for the conveyance was made in the company’s name, and by the partner who apparently transacted all its business. Corwin received the conveyance, and rested upon its security, in the belief that it was authorized by the company. *217 He had no notice of Suydam’s objection to the conveyance, and Andrew De Graff acted in the belief that the objection had been withdrawn, and seems to have been permitted to act in that belief, in subsequently issuing similar orders for the conveyance of the remaining parcels of real estate. The objection of Suydam was, not to the sale of this property for payment or security of Andrew De Graff’s private debts, but to its sale for any purpose. When we add to these facts the further fact, that Andrew De Graff, with full power to sell the property of the firm for payment of its debts, was himself a creditor of the firm to the full amount of the property so disposed of, it seems to us that we have a set of circumstances fully rebutting any presumption of fraud or bad faith in the transaction. The foundation of the rule which declares such appropriations of partnership assets invalid, as against the other members of the firm, is the fact that they are fraudulent and collusive. A.nd although, in the absence of proof to the contrary, they are always presumed to be fraudulent and collusive, yet the presumption is not always conclusive, but may in some cases be rebutted by evidence, showing the bona Jides of the transaction, and that the purchaser was guilty of no want of caution or prudence. See Story on Partnership, sec. 133 et seq., and authorities cited. We think that the evidence here, on the part of Corwin, fairly brings his case withiu the spirit and meaning of the rule deducible from these authorities.
There is another ground on which some of the members of the court incline to place the denial of Suydam’s right to impeach the transaction with Corwin; but whether that ground is maintainable, we deem it unnecessary to decide in the present case. 1 refer to the ground, insisted upon by counsel, that the transaction between Andrew De Graff and Suydam, by which the former transferred to the latter, or receipted to him, for the one-third of the “ advance ” made by Andrew to the firm, is to be regarded as a strictly private matter, in no way affecting the partnership interests; that it left the relations of the firm to the two partners un *218 changed, the firm still continuing debtor to Andrew for the full amount of the $22,000 advanced, and debtor to Suydam for nothing, at least for nothing until the firm, or rather the third partner, "William De Graff, should receive notice thereof, or give to it his sanction. I confess myself unable to deny the justness of this position. If it.be correct, then it is evident that Suydam acquired by the transfer no rights but such as he can work out through Andrew De Graff, and can claim nothing beyond the amount found due to Andrew De Graff* on final settlement; in other words, he can claim 'nothing, and is himself, therefore, a debtor, and not a creditor of the firm. But if this is not maintainable as a proposition of law, it, at least, has the effect to strengthen the position of Corwin, by showing that if Corwin’s transaction with Andrew De Graff is impeachable, Suydam is not in a condition to impeach it. The two transactions with Andrew De Graff amount to this : Andrew wag creditor of the firm to the amount of some $22,000. Being liable individually both to Corwin and to Suydam, he satisfies his liability to Suydam by assigning to him part of this indebtedness, and satisfies his liability to Corwin by assigning to him assets of the company, to the value of another part of the same indebtedness. .Under such circumstances, can Suydam impeach and avoid the transfer to Corwin, and for the mere purpose of paying his claim so derived under Andrew De Graff? It seems to us that if either of the parties is required to stand in the shoes of Andrew De Graff, and work out his claim through him, both should be required to do so.
The judgment will be reversed, and a decree entered so modified as to release Corwin from liability.

Decree accordingly.

Day, C. J., McIlvaine, Stone, and WUite, JJ., concurring.